# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br>   vs.<br><br>JEREMY ALAN BRISLIN,<br><br>                         Defendant. | CASE NO. 12CR4319-LAB<br><br>**ORDER DENYING JOINT APPLICATION FOR SENTENCE REDUCTION PER AMENDMENT 782 (2014) AND 18 U.S.C. § 3582(c)** |

Defendant, Jeremy Brislin, with the acquiescence and support of the government, has filed a motion pursuant to 18 U.S.C. § 3582(c) ("Joint Application for Sentence Reduction" or "Joint Application") asking the Court to reduce his sentence for conspiracy to import marijuana. The Joint Application purports to set forth the Court's original Guideline calculations, but a review of the sentencing hearing transcript reveals that the parties' figures are off. Brislin's Starting Offense level (for two and a half tons of marijuana) was 30. The parties represent that the Court added a 2-point adjustment because Brislin was a boat captain (§ 2D1.1(b)(3)(C)), but that's wrong. A two-point upward adjustment was made, but the points were added because Brislin possessed dangerous weapons during the offense – a shotgun and a .40 caliber handgun (§ 2D1.1(b)(1)). (Tr.[1], 11, 13) (Court declining to add 2-levels because Brislin was a boat captain) and (Tr. 23) (Court adding 2-levels because

---

[1] "Tr." refers to the transcript of Brislin's sentencing hearing on January 28, 2013.

Brislin possessed guns during the offense). From an upward adjusted offense level of 32, the Court then adjusted downward 3-levels for Acceptance of Responsibility, (Tr. 28), departed 4-levels for Fast Track (§ 5K1.3), (Tr. 28), and reluctantly granted an additional 6-point departure on the government's representation that Brislin had provided Substantial Assistance (§ 5K1.1). (Tr. 28-29). Brislin's total offense level was 19 and, owing to a long felony record, he fell within Criminal History Category 5. His Guidelines range was 57–71 months.[2] The low end of the Guideline range, as originally calculated by the Court, was 3 months below the statutory mandatory minimum sentence of 5 years.[3]

But the Court remained troubled by what it perceived as the government's overly-generous recommendation for Brislin's supposed Substantial Assistance when it analyzed Brislin's offense under the 18 U.S.C. § 3553(a) factors. In one exchange, the Court commented that the prosecutor's declaration in support of the Substantial Assistance recommendation was "platitudinous . . . It doesn't tell me anything." (Tr. 14). Specifically, the Court complained that it "had no idea whether anybody [else] was arrested" or "has been convicted or charged as a result" of whatever information Brislin provided, and observed that the AUSA's declaration consisted of "just generalized statements . . ." (*Id.*). It was at that point in the hearing that fully crediting Brislin's purported Substantial Assistance got even harder.

According to the Probation Report, Brislin had told arresting agents that he had been offered money to reconnoiter with a panga boat on the open seas where he would pick up a large amount of marijuana. (Tr. 17; PSR[4] 5). He said he was to deliver the marijuana to a dock in Newport Beach, where it would be offloaded. (*Id.*). However, while the Court was

---

[2] The parties represent the calculations differently. The Joint Application lists the adjusted base offense level as 29, but there is a tiny asterisk next to that number referencing § 5K1.3 – Fast Track departures. What the parties meant by this reference is not clear because under no scenario was Brislin's Base Offense Level 24 (*i.e.* 29 - 4 for Fast Track). The parties also erroneously set forth his original Guideline range as 140-175 months.

[3] The Court was not required to impose the mandatory minimum sentence because Brislin received a downward departure for Substantial Assistance.

[4] "PSR" refers to the Probation Report in this case.

attempting to verify these facts with Brislin's counsel, Brislin asked to speak. Contrary to what he had said to the arresting agents, Brislin told the Court that he was merely a look out. (Tr. 15). And though Brislin's counsel had informed the Court that the shotgun and .40 caliber handgun found in the boat belonged to the defendant, Brislin contradicted his counsel claiming "they belong to someone else." (*Id*.). Recognizing the significant discrepancies in Brislin's accounts, the prosecutor helpfully acknowledged: "My understanding is that the story has gone back and forth a couple of times ..." (Tr. 17). The Court then asked the prosecutor – perhaps rhetorically – "This is the fellow that you think deserves 6 points off for substantial assistance . . . [a guy] who keeps telling different stories about critical aspects of the case?" (*Id*). The prosecutor sheepishly replied: "Correct, your honor," but "I wasn't expecting this." (*Id*.). This remarkable exchange between the Court, Brislin, Brislin's counsel, and the prosecutor led the Court to observe that any value Brislin may have had as a witness had been compromised by his vacillations and contradictions. (Tr. 28).

Recognizing that the Guidelines range negotiated by the parties did not account for several aggravating factors, among them: (1) that the offense involved a significant tonnage of marijuana; (2) that Brislin had consistently failed on prior grants of probation and parole in connection with his seven prior felonies; (3) that Brislin had a leadership role in the drug smuggling plot; and (4) that the plea agreement had spared Brislin a mandatory 5-year sentence for possessing and carrying guns during a drug trafficking offense (18 U.S.C. § 924(c)), the Court considered whether to vary upward. *See United States v. Jackson*, 577 F.3d 1032, 1036 (9th Cir. 2009) (after departing based on Substantial Assistance, court may consider § 3553(a) factors to determine whether an upward variance is warranted). Ultimately, the Court determined that neither the sentencing range nor the parties' sentencing recommendation of 46 months served the purpose of specific or general deterrence, (Tr. 32), nor did they protect the public, (Tr. 34), nor did they promote respect for the law. (*Id*.) To account for these shortcomings, the Court varied upward by 29 months from the high end of the Guidelines range and sentenced Brislin to 100 months.

/ / /

1    The Court finds that Brislin is eligible for a reduction of sentence under 18 U.S.C.
2 § 3582(c).  His original Sentencing Guidelines range was calculated as follows:
3    Base Offense Level:                                          30
4    Specific Offense Characteristic:
5    (Possession of Dangerous Weapon(§ 2D1.1(b)(1))        +2
6    Acceptance of Responsibility (§ 3E1.1)                  -3
7    Fast Track (§ 5K3.1)                                    -4
8    Substantial Assistance (§ 5K1.1)                        -6
9    Upward Variance                                         (29 months)
10   His Adjusted Offense Level was 19, and with a Criminal History Category of V, his
11 advisory Guidelines range was 57-71 months.  Neither the Fast Track Departure nor the
12 upward variance are counted when recalculating Brislin's Adjusted Guidelines.
13   With the 2-level reduction in Base Offense Level, Brislin's adjusted Guidelines are:
14   Base Offense Level:                                          28
15   Specific Offense Characteristic:
16   (Possession of Dangerous Weapon(§ 2D1.1(b)(1))        +2
17   Acceptance of Responsibility (§ 3E1.1)                  -3
18   ~~Fast Track (§ 5K3.1)~~                                ~~-4~~
19   Substantial Assistance (§ 5K1.1)                        -6
20   ~~Upward Variance~~                                     ~~(29 months)~~
21   His Adjusted Offense Level is 21, his Criminal History remains Category 5, and his
22 advisory Guidelines range becomes 70-87 months. Because the low end of the Adjusted
23 Guidelines range is below the 100 month sentence the Court originally imposed, Brislin is
24 eligible under § 3582(c) for a sentence reduction to 70 months.
25   But eligibility for a sentence reduction is not the same as entitlement to one.  In other
26 words, a defendant may still be denied a reduction in sentence if the Court concludes that
27 a reduction is not equitable and unwarranted after considering the §3553(a) factors.  That's
28 the Court's judgment here.

In imposing Brislin's original 100 month sentence, the Court varied upward 29 months, explaining that a variance of that length was necessary because the Guidelines range negotiated by the parties (57-71 months) didn't adequately account for many aggravating factors in the case. To name a few: (1) the offense involved over two tons of marijuana; (2) Brislin played a major role in the offense; (3) the offense involved possession and carrying of firearms for which Brislin could have been, but was not, charged with an offense that carries a mandatory prison sentence; (4) Brislin had a long criminal history consisting of seven prior felony convictions, not to mention numerous revocations of parole and probation; and (5) Brislin's account of his involvement in the offense was contradictory and (as to some particulars) manifestly unbelievable[5], compromising his credibility as a potential witness and diminishing the effect of the post-arrest assistance he provided. These aggravating factors jumped out from the pages of the sentencing transcript and the PSR as the Court reviewed Brislin's sentence anew in connection with the Joint Application.

The Court finds that although Brislin is eligible for a reduction of sentence to 70 months, a reduction is neither equitable or warranted. Brislin's original 100 month sentence represented a fair balancing of the objectives of sentencing. It was reasonable when imposed, and it remains so.

The Joint Application for Sentence Reduction pursuant to Amendment 782 of the Sentencing Guidelines and 18 U.S.C. § 3582(c) is **DENIED**.

**IT IS SO ORDERED**.

DATED: May 12, 2016

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[5] Brislin maintained at his sentencing hearing that "the guns were in my name, but they belong to somebody else." (Tr. 15). He admitted bringing the guns onboard himself, (Tr. 16), but he insisted that their only purpose was to shoot at targets. (*Id.*). The Court rejected this explanation: "I don't believe . . . as a practical matter that the guns were [onboard] to shoot glow sticks. I don't believe that. Doesn't make sense to me that they bring a couple of guns along just to toy around while they were on that very important mission . . . I don't believe that for a second. I think the guns were there to protect the marijuana. " (Tr. 27).